Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4058 | **DATE** | 8/20/2002 |
| **CASE TITLE** | CHAPMAN vs. GROPEMAN INC  01 A 479  98 B 19860 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, the decision of the Bankruptcy Court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 23 2002 | |
| | Notified counsel by telephone. | | date docketed | 8 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/20/2002 | |
| JS | courtroom deputy's initials | | date mailed notice  JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **DOCKETED** |
| GROPMAN, INC., | ) No. 02 C 4058 | AUG 2 3 2002 |
| Debtor. | ) | |
| ROBERT C. CHAPMAN, | ) | (Appeal From an Order of the United States |
| Appellant, | ) | Bankruptcy Court for the Northern District |
| | ) | of Illinois in No. 01 A 00479 |
| v. | ) | (Case No. 98 B 19860)) |
| JOSEPH A. BALDI | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

This is an appeal from a decision of the Bankruptcy Court for the Northern District of Illinois, Eugene R. Wedoff, C.J. Appellant Robert C. Chapman ("Chapman") asks this court to set aside the judgment entered in favor of Joseph A. Baldi ("Trustee"), as the trustee of the estate of debtor Gropman, Inc. ("Debtor"). This court has jurisdiction pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8001 and 8002. For all the following reasons, the decision of the Bankruptcy Court is affirmed.

I.

**STATEMENT OF FACTS**

Prior to January 14, 1997, the outstanding shares of the Debtor f/k/a Card Word, Inc. were owned by three parties. Appellant and his brother, Ricky Chapman ("Chapmans") owned 56.5% of

1

the outstanding shares. Alan Gropman ("Gropman") owned the remaining 43.5% of the Debtor's outstanding shares. Chapman owned 85.8% of the 56.5% shares outstanding and Ricky Chapman owned 14.2%.

In order for Gropman and his family to become sole owners of Card World, Inc., Gropman and the Chapmans entered into a stock redemption agreement dated January 14, 1997, and Chapman received $250,000 for his stock in Card World, Inc. Simultaneous with the execution of the stock redemption agreement, Chapman entered into a consulting agreement and a covenant not to compete. Pursuant to the terms of the consulting agreement, Debtor made an initial payment to Chapman of $21,450 and promised to pay an additional $107,250 in future installments. Pursuant to the terms of the covenant not to compete, Debtor agreed to pay Chapman a total of $21,450 of which Chapman received $18,590. In addition to the execution of the consulting agreement and covenant not to compete, Gropman entered into an additional agreement with Chapman ("Additional Agreement") pursuant to which Gropman agreed to pay Chapman an additional $37,000 as an added inducement for Chapman to execute the stock redemption agreement. In all there were four agreements entered into: (1) a stock redemption agreement; (2) a consulting agreement; (3) a covenant not to compete; and (4) the Additional Agreement ("Redemption Agreements"). Pursuant to the Redemption Agreements, Chapman was to receive 85.8% of the total compensation under each separate Agreement, and Ricky Chapman the other 14.2%.

On June 26, 1998, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Debtor. An Order of Relief was entered on July 21, 1998 and the Trustee was appointed on September 18, 1998. On May 21, 2001, Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers and Disallow or Subordinate Claims. Count I of the Complaint sought

2

to avoid and recover the transfers from Debtor to Chapman pursuant to the Illinois Uniform Fraudulent Transfer Act ("UFTA") 740 ILCS 160/1 et. seq., Count II sought to avoid and recover the transfers from Debtor to Chapman pursuant to 11 U.S.C. § 548(a)(2), and Count III sought to disallow Chapman's claim pursuant to 11 U.S.C. § 502(d). The Chapmans filed a Motion for Partial Summary Judgment on October 20, 2001, asserting that the $250,000 received by Chapman pursuant to the stock redemption agreement could not be recovered from them because the funds were earmarked for payment to the Chapmans by Jerome Gropman, Gropman's father, who provided money to the Debtor for the stock redemption. On December 26, 2001, the Bankruptcy Court found that the $250,000 paid by Jerome Gropman was earmarked for a specific use and therefore was not property of the Debtor which could be recovered by the estate. The Order did not contain findings relating to the allocation of consideration paid to the Chapmans or possible recovery of payments by the Debtor under the Redemption Agreements.

On May 9, 2002, this case was tried in a one-day bench trial. In addition to the evidence presented at trial, the parties stipulated to various facts, including the payments received by Chapman from Debtor. The parties also stipulated that the deposition testimonies of Gropman and Ricky Chapman were admissible as evidence. Ricky Chapman settled with the Trustee in a separate agreement and is not a party to this appeal.

II.

A.

## STANDARD OF REVIEW

The standard of review in this case is limited to determining "whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict

when viewed in the light most favorable to the party winning the verdict." U.S.E.E.O.C. v. Century Broadcasting Corp., 957 F.2d 1446, 1457 (7th Cir.1992) (citation omitted). This court will give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses," Lange v. United States, 31 F.3d 535, 539 (7th Cir.1994). Careful to avoid substituting judgment for that of the factfinder at trial, this court must ascertain whether there exists sufficient evidence upon which any rational finder of fact could reach the trial verdict. See Gile v. United Airlines, Inc., 213 F.3d 365, 372 (7th Cir. 2000).

B.

1.

The Bankruptcy Court did not err in finding that the Trustee met his burden of proof under 11 U.S.C. § 548. § 548 provides:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

To obtain relief under section 548(a)(1)(B), the Trustee must establish not only that the debtor transferred an interest in property for less than reasonably equivalent value, 11 U.S.C. § 548(a)(1)(B)(i), but also establishes that the debtor "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation"

4

Id. § 548(a)(1) (B)(ii)(I); Dunham v. Kisak, 192 F.3d 1104, 1109 (7th Cir. 1999).

The test used to determine reasonably equivalent value requires the court to determine the value of what was transferred and compare that value to the value received by the debtor. Barber v. Golden Seed Co., Inc., 129 F.3d 382, 387 (7th Cir. 1997)(citation omitted). Determining reasonably equivalent value is not a fixed mathematical formula; rather, the standard for reasonable equivalence should depend on all the facts of each case. Barber, 129 F.3d at 387 (citations omitted).

In ruling in favor of the Trustee, the Bankruptcy Court found that the Trustee successfully carried its evidentiary burden of showing that the Debtor did not receive a reasonable equivalent value for the value it transferred to Chapman and successfully carried its evidentiary burden of showing that the Debtor was insolvent at the time of the transfers to Chapman. Upon review of the evidence in this case, it is clear the Trustee presented sufficient evidence such that a reasonable finder of fact could find in favor of the Trustee under § 548. Specifically, the unchallenged expert testimony at trial concerning the insolvency of the Debtor at the time of the transfers to Chapman provided a sufficient basis for the Bankruptcy Court to makes its judgment as to insolvency and as to reasonable equivalent value.

a.

The Bankruptcy Court did not err in finding the Debtor was insolvent at the time of the Redemption Agreements. After hearing the evidence presented during the course of the one-day bench trial, the Bankruptcy Court answered first whether Debtor was insolvent in January, 1997. In answering this question, the Bankruptcy Court relied upon the testimony offered by an expert witness tendered by the Trustee. The Trustee's expert testified about two different methods of which to value the Debtor's assets in January, 1997. The expert testified that, in this case, the most appropriate

method of evaluating the solvency of the Debtor was the liquidation approach, given the fact that the Debtor, during the time in question, was not generating any income for purposes of an analytical comparison. Under the liquidation valuation of the Debtor's assets, the expert testified that the Debtor was in a situation where its assets fairly valued did not exceed its liabilities and therefore was insolvent on January 14, 1997.

In similar fashion, under the going-concern method, the expert concluded that the Debtor was insolvent in January of 1997. Again the expert testified that given the fact that the Debtor was not generating income for purposes of analytical comparison, he was forced to look at a best-case hypothesis under a going-concern method. Under the best-case hypothesis, the expert calculated a capitalization of income with a 3% increase using the Debtor's 1995 results of operation, the most profitable year for the Debtor over the previous three years. Overall, the court found the expert's testimony credible, reliable and unchallenged, thus satisfying Trustee's burden of proof by a preponderance of the evidence.

Appellant argues that the Bankruptcy Court erred in finding Debtor insolvent in January, 1997. In so arguing, appellant does not challenge the testimony offered by the expert at trial. Instead appellant speculates that if the Trustee's expert had interviewed Gropman and utilized a third method of evaluating solvency, the expert would have concluded the Debtor not insolvent in January 1997. Whether there exists alternative methods of determining solvency or other resources bearing on the ultimate question of solvency is of no issue, where the testimony offered by the expert at trial went unchallenged and was sufficient to form the basis of the Bankruptcy Court's decision. The record in this case indicates that the only evidence submitted on the question of solvency came from the Trustee's expert. Thus, the Bankruptcy Court being in the best position to evaluate the expert's

credibility, had sufficient evidentiary basis upon which to make its rulings.

b.

The Bankruptcy Court did not err in finding that the Debtor did not receive reasonably equivalent value for its payments to Chapman. As to whether the Debtor received a reasonably equivalent value for value given, the parties stipulated as to the value of the assets transferred from Debtor to Chapman: $114,400 under the consulting agreement, $18,590 under the covenant not to compete, and $37,000 under the Additional Agreement. (Tr. of Proceedings, p. 104, lines 16-21, May 9, 2002). Thus leaving the Bankruptcy Court to determine the reasonably equivalent value the Debtor received in return for the value given up.

First, the Bankruptcy Court found based upon the evidence that the consideration paid for the consulting agreement, the covenant not to compete and the Additional Agreement was all part of a single transaction to redeem Chapman's stock. The record contains substantial evidence supporting this finding of fact. In particular, appellant's own testimony at trial is sufficient to support the Bankruptcy Court's findings that payments under the Redemption Agreements and the Additional Agreement were part of an integrated transaction to redeem appellant's stock. Specifically, appellant testified at trial that he was not involved in the determination of the final values for any of the agreements executed on January 14, 1997,, he simply provided a bottom-line figure to his accountant. Further, appellant testified that he concern himself with how the consideration for the stock redemption was to be divided, he was solely interested in the final figure. (Tr., p. 54-55, lines 23-25, 1-20).

Second, having already found the Debtor to have been insolvent on January 14, 1997, the Bankruptcy Court found that the value of the stock transferred from Chapman to Debtor to be

7

worthless. Whereas, the Bankruptcy Court found that the covenant not to compete gave some value to the corporation, (Id. at 106, lines 7-9), and also found that if Chapman provided consulting services, those services would have some value to the Debtor. (Id. at line 5-7). Taking the whole transaction into effect, the Bankruptcy Court found that the value received by Debtor was not equivalent to value of the funds it transferred to appellant.

Appellant argues that the Trustee did not offer any evidence to establish that the payments to Chapman were for less than reasonably equivalent value. Appellant explains the only testimony at trial regarding reasonably equivalent value came from Chapman and in the absence of any rebuttal evidence to refute or compromise the testimony given by Chapman the Bankruptcy Court erred in its valuation of the consulting agreement and the covenant not to compete. Appellant's recitation of the trial record, however, is incorrect.

The Bankruptcy's determination of reasonably equivalent value simplified to whether the value of the stock transferred from appellant plus the value of the services rendered under the consulting agreement and the value of the covenant not to compete was reasonably equivalent to $114,400 plus $18,590, and $37,000 ($169,990) transferred from Debtor. Since there was sufficient evidence at trial to establish that Debtor was insolvent in January, 1997, thereby making the value of Chapman's stock transferred worthless, the Bankruptcy Court justifiably simplified its determination further to solely focus on whether the value of the services rendered under the consulting agreement and the value of the covenant not to compete to Debtor was reasonably equivalent to $169,990. Upon hearing all the evidence, the Bankruptcy Court found that there was insufficient evidence in the record to put a dollar amount upon the services rendered under the consulting agreement or onto the value of the covenant not to compete. Accordingly, with at least $169,000 in value being transferred out

8

by Debtor, the Bankruptcy Court was without sufficient evidence to reasonable equate $169,000 of value being received by Debtor.

Appellant incorrectly asserts that the Trustee had to prove that consultant contract and covenant not to compete had no reasonably equivalent value. Appellant points to the Bankruptcy Court's concessions that there was perhaps some value within the two contracts provided to the Debtor and concludes that since there was some value assigned to the consulting contract and to the covenant not to compete then the Trustee failed to carry its burden. It is clear from the statute, however, that Trustee did not have the burden under § 548(a)(1)(B) to prove that the value received by Debtor had no value. Instead, the Trustee had the burden at trial to prove that Debtor did not received a reasonably equivalent value in comparison to the value transferred from Debtor. Since there is sufficient evidence in the record such that the Bankruptcy Court could find that the value of the stock received by Debtor was worthless and the value under the consultant contract and covenant not to compete speculation, the Trustee successful carried its evidentiary burden of proving that the Debtor received less than it gave to Chapman.

2.

The Bankruptcy Court did not err in finding that Chapman did not meet his burden of proof under § 548(c). Section 548(c) provides:

> (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c). There are two prongs to the defense under § 548(c)--value and good faith, and both must be proven by the transferee. In re Roti, 271 B.R. 281, 295 (Bankr. N.D.Ill. 2002). In

evaluating Chapman's defense under § 548(c), the Bankruptcy Court found that Chapman had not established the value of either the consulting agreement nor the covenant not to compete. Although the Bankruptcy Court again conceded that within either contract there may have been some value to Debtor, the Bankruptcy Court was proper in ruling that there was insufficient evidence upon which to adequate fix any amount of value to the services rendered. Accordingly, having failed to carried his evidentiary burden as to the first prong under §548(c), the Bankruptcy Court was properly in not considering Chapman's evidence if any under the second prong and ultimately ruling against Chapman under § 548(c).

3.

The Bankruptcy Court did not err in avoiding payments made to Chapman more than one year after the filing of the bankruptcy petition against Debtor. Appellant argues that the Bankruptcy Court erred in calculating the actual amounts to be avoided under the consulting agreement, the covenant not to compete and the Additional Agreement. Appellant asserts that the Bankruptcy Court should not have avoided the full $114,400 paid to Chapman under the consulting agreement where only $50,050 was paid within one year prior to Debtor filing bankruptcy. Similarly, the Bankruptcy Court should not have avoided the full $18,590 paid to Chapman under the covenant not to compete where only $10,010 was paid within one year prior to Debtor filing bankruptcy. Finally, the Bankruptcy Court should not have avoided the full $37,000 paid to Chapman under the consulting agreement where only $6,000.00 was paid within one year prior to Debtor filing bankruptcy.

Count I of the Complaint sought to avoid and recover the transfers from Debtor to Chapman pursuant to the UFTA, and Count II sought to avoid and recover the transfers from Debtor and Chapman pursuant to 11 U.S.C. § 548(a)(2). While appellant is correct that under §548(a), a Trustee

10

can only avoid transfers of an interest of the debtor in property that was made or incurred on or within one year before the date of the filing of the petition, 11 U.S.C. § 548(a), the UFTA, provides that a Trustee can bring a fraudulent transfer action within the later of four years after the transfer was made or within one year after the transfer was or reasonably could have been discovered. In re Spatz, 222 B.R. 157, 164 (N.D.Ill.1998). Since the provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA. In re Randy, 189 B.R. 425, 433 (Bankr.N.D.Ill.1995), the Bankruptcy Court properly was correct in avoiding all transfers made to Chapman where the payments made to Chapman were made within four years of Debtor's bankruptcy petition, where the Bankruptcy Court already had a sufficient evidentiary basis upon which to find the Debtor insolvent on January 14, 1997 and to find the value received by Debtor not equivalent to the value of the funds it transferred to appellant.

4.

The Bankruptcy Court did not err in avoiding payments made to Chapman under the Additional Agreement. Section 550 provides:

> a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.
> (b) The trustee may not recover under section (a)(2) of this section from--
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided. . .

Appellant argues that the Bankruptcy Court erred in finding him liable for the return of the payments made by Debtor pursuant to the Additional Agreement. Grasping for straws, appellant cites Bonded

11

Financial Services, Inc. v. European American Bank, 838 F.2d 890, 893 (7th Cir. 1988) for the proposition that the minimum requirement of status as a "transferee" is dominion over the money or other asset, or the right to put the money to one's own purposes, and desperately argues that Chapman was not a initial transferee nor the individual for whose benefit the initial transfer under the Additional Agreement, but instead was an immediate transferee of the initial transferee and therefore protected under §550(b)(1). The Bankruptcy Court taking the Bonded Financial case into account, found that the funds transferred from Debtor to Chapman consisted of series of direct transfers, which were completed at the time they were made. The evidence at trial showed that while Debtor was not a party to the Additional Agreement, the Debtor made the payments directly to Chapman pursuant to the Additional Agreement. Thus, Chapman was the initial transferee of the payments having dominion and control over the money and thus beholding to the avoidance powers of the Trustee.

## CONCLUSION

For all the above stated reasons and upon review of the Bankruptcy Court's judgment, this court finds sufficient evidence in the record by which the Bankruptcy Court based its decision. Accordingly, the decision of Bankruptcy Court is affirmed.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 20, 2002

12